IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Maria Benson-White, | C/A No. 0:08-2366-HFF-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Maria Benson-White ("Benson-White"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On January 24, 2005, Benson-White applied for DIB, alleging disability beginning November 30, 2004. Benson-White's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on November 27, 2006, at which Benson-White, who was represented by counsel, appeared and testified. The ALJ issued a decision on July 13, 2007 denying benefits and concluding that Benson-White was not disabled because she was capable of performing past relevant work as a secretary at a medical university.

Benson-White was fifty-nine years old at the time of the ALJ's decision. She has a high school education and past work experience as an administrative specialist with the Medical University of South Carolina, where she was employed for over 32 years. (Tr. 64, 185.) Benson-White alleges disability since November 30, 2004 due to severe degenerative joint disease of both knees, complicated by obesity. (Tr. 15, 17.)

The ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since November 30, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*)

3. The claimant has the following severe impairments: obesity and degenerative joint disease of the knees (20 CFR 404.1520(c)).

    *   *   *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

    *   *   *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for sedentary work[1] with use of a cane while upright with no more than occasional crouching and stooping.

    *   *   *

6. The claimant is capable of performing past relevant work as secretary at a medical university (DOT# 201.362-014). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

    *   *   *

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2004 through the date of this decision (20 CFR 404.1520(f)).

(Tr. 15-22.)

---

[1] Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally (2 hours in an 8-hour day).

Benson-White filed a request for Appeals Council review and submitted additional letters and medical records as evidence. (Tr. 11, 163-181.) On May 2, 2008, the Appeals Council denied Benson-White's request for review and concluded that none of the additional evidence provided a basis for changing the ALJ's decision, making the decision of the ALJ the final action of the Commissioner. (Tr. 5.) Benson-White filed this action on June 30, 2008.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie

case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

**ISSUES**

Benson-White raises the following issues for this judicial review:

I. The ALJ's Step Four finding that Benson-White could return to her past relevant work was not supported by substantial evidence.

II. The ALJ committed reversible error by rejecting the opinion of treating physician James Lipke, M.D.

III. The ALJ made an improper credibility analysis.

(Pl.'s Br., Docket Entry 31.)

**DISCUSSION**

**A.  Benson-White's Past Relevant Work**

The plaintiff first complains that the ALJ erroneously concluded that she could still perform her past relevant work. "[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if [s]he is capable of performing [her] past relevant work *either* as [s]he performed it in the past *or* as it is generally required by employers in the national economy." Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir. 1995) (emphasis added) (citing SSR[2] 82-61). It is axiomatic that the ALJ must first correctly determine the requirements of the plaintiff's past relevant work before undertaking this inquiry.

Benson-White testified that prior to the alleged onset date of disability, she worked at a hospital as an "administration specialist." (Tr. 185-89.) She testified that the job was primarily a seated, secretarial job, in which she spent eighty percent of her time answering telephones and the remaining twenty percent of her time stocking and ordering light-weight medical supplies—generally less than five pounds—and assisting doctors as needed. (Id.)

---

[2]Social Security Regulation.

In this matter, the ALJ consulted the Dictionary of Occupational Titles ("DOT") and determined Benson-White's past relevant work to be "secretary at a medical university (DOT # 201.362-014)." (Tr. 22.) The description of that job, as it is generally performed, is as follows:

> Performs secretarial duties, utilizing knowledge of medical terminology and hospital, clinic, or laboratory procedures: Takes dictation in shorthand or using dictaphone. Compiles and records medical charts, reports, and correspondence, using typewriter or word processor. Answers telephone, schedules appointments, and greets and directs visitors. Maintains files.

Dictionary of Occupational Titles, 201.362-014 Medical Secretary (4th ed. 1991). The ALJ found Benson-White retained the residual functional capacity to perform "sedentary work with use of a cane while upright with no more than occasional crouching and stooping" and that she could perform her past relevant work as a medical secretary *as it is generally performed*. (Tr. 19, 22.) The DOT job description indicates that the position of medical secretary is a sedentary job and does not require any shelf-stocking or any other standing duties that would clearly preclude the use of a cane when upright.[3] Further, it does not require more than occasional crouching or stooping.

Benson-White first argues that the ALJ failed to provide sufficient information to support his conclusion that her past relevant work matched the description of a medical secretary, relying heavily on the fact that Benson-White's job required her to stock medical supplies, which is not included in the DOT description of medical secretary, and that she required the use of a cane. Further, Benson-White contends that the differences in her description of her past relevant work and the description of "medical secretary," as well as the fact that her use of a cane is a significant non-

---

[3]Benson-White testified that the main reason she could not return to her previous job was that she could not stand and stock the medical supplies.

Page 6 of 14



exertional impairment, require the testimony of a vocational expert to determine whether Benson-White can perform her past relevant work.

SSR 82-62 sets forth the evidence that an ALJ should consider in making a determination as to whether the plaintiff can perform her past relevant work:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62. In evaluating this evidence, the ALJ should determine whether "the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it" or whether "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61. In the latter inquiry, the ALJ may rely on job descriptions found in the DOT. Id. Benson-White appears to argue that her job duties are different from any of the jobs contained in the DOT, and, therefore, the ALJ's failure to take vocational expert testimony was error. Benson-White relies on a portion of SSR 82-61, which states that "[f]or those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert." However, the regulations specifically acknowledge that "[i]t is understood that some individual jobs may require somewhat more or less exertion than the DOT

description." Id. "[I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" Id.

Applying the above-described law and regulations to the facts in this case, the court finds substantial evidence in the record to support the ALJ's decision that Benson-White's past relevant work was as a medical secretary, DOT # 201.362-014. To the extent that the ALJ's failure to specifically enumerate the job duties is error, it is harmless, as he found that Benson-White could perform the job of "medical secretary" as it is generally performed, and the job duties are specifically enumerated in the DOT. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result"). Further, there is substantial evidence to support the conclusion that Benson-White could perform her past relevant work as it was generally performed, as there was evidence that she could perform the functional demands and job duties as this job is performed in the national economy. See Pass, 65 F.3d at 1203 (stating that the claimant bears the burden of proof at step four to establish that she is unable to return to past relevant work).

**B.     Dr. Lipke**

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources, because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, a treating physician's opinion is evaluated and weighed "pursuant

to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

In this case, the ALJ rejected some of the findings of Dr. Lipke, Benson-White's treating primary care physician.[4] (Tr. 21.) The ALJ appears to have rejected Dr. Lipke's indication that Benson-White would need frequent unscheduled breaks for relief of pain, requiring her to leave her workstation.[5] Further, the ALJ stated that he did not accept Dr. Lipke's conclusion that Benson-White could not return to full-time work as an administrative assistant. The ALJ rejected these findings based on his determination that Dr. Lipke's opinion was (1) "not fully supported by the medical evidence including his own progress notes;" (2) inconsistent with the notes and instructions of Benson-White's treating orthopedist, Dr. McCoy; (3) offered at the request of Benson-White and her attorney, rather than of his own initiative; and (4) supplied via "check-off forms," which "amount[ed] only to a summary conclusion about function and [were] not a reasoned residual functional capacity." (Id.)

---

[4]As noted by the defendant, Benson-White does not raise any arguments concerning Dr. Like's November 2007 opinion, which post-dated the ALJ's decision and was submitted to the Appeals Council. (Supplemental Tr. 203.)

[5]Dr. Lipke noted that her workstation could not be left unattended; however, the ALJ observed that this statement appeared to refer to a prior job of Benson-White.



As stated above, the ALJ is not required to give a treating physician's opinion controlling weight and may accord it less weight for a variety of reasons. Hunter, 993 F.2d at 35; Johnson, 434 F.3d at 654. In this case, the ALJ discussed in detail his reasons for not accepting all of Dr. Lipke's opinions. While the plaintiff attempts to undermine each of these reasons, she has not pointed to any medical evidence which would contradict the ALJ's conclusions. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Upon review of the medical evidence and the ALJ's decision, the court finds substantial evidence to support the ALJ's decision to accord Dr. Lipke's opinion less than full weight. See, e.g., 20 C.F.R. § 404.1527(e) (stating that opinions that a claimant is "disabled" or "unable to work" are reserved to the Commissioner); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's finding that two treating physicians' opinions were entitled to minimal weight, in part, because the opinions were in the form of a checklist, unsupported by objective evidence, and based on the claimant's subjective complaints).

**C.  Benson-White's Credibility**

Finally, Benson-White briefly argues, relying on Hines v. Barnhart, 453 F.3d 559, 566 (4th Cir. 2006), that "[t]he ALJ selectively cited references from the record concerning Benson-White's daily activities to support his adverse credibility findings[.]" (Pl. Br. at 16, Docket Entry 31.)

In evaluating subjective complaints of pain, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In this matter only the

*PJG*

second step is at issue,[6] during which the ALJ must expressly consider "the intensity and persistence of the claimant's pain and the extent to which it affects [his] ability to work" Id.

In applying the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 20.) Thus, the issue is whether the ALJ properly evaluated Benson-White's subjective complaints regarding the intensity and persistence of her pain and the extent to which it affects her ability to work. See Craig, 76 F.3d at 594. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id.

---

[6]The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

PJG

In this case, the ALJ expressly considered several factors in discounting the credibility of Benson-White's subjective complaints of pain, including not only Benson-White's testimony but also the medical and non-medical evidence. (Tr. 20.) Specifically, the ALJ noted that (1) despite testifying that her medications made her drowsy, the record does not contain medical notations recording that Benson-White made such complaints to her physicians; (2) treatment records indicated that she was doing well and improving with physical therapy; (3) Dr. McCoy, Benson-White's treating orthopedist, directed her to do lunges and continue exercising; (4) she was consistently described as not being in any acute distress in her visits with Dr. Lipke from January 5, 2005 through March 8, 2006 and likewise by Dr. McKoy on March 29, 2006; and (5) Benson-White had a history of non-compliance with medical orders. (Tr. 20; see also Tr. 136, 141, 144, 191.)

The court has reviewed the record and finds that the ALJ conducted a proper analysis in concluding that Benson-White's subjective complaints of pain were not entirely credible. See Craig, 76 F.3d at 595. In arguing that the ALJ conducted a selective recitation of Benson-White's daily activities, Benson-White has not directed the court to any evidence that support her position, other than a cite to the record that is incorrect and apparently does not exist. (Pl. Br. at 16, Docket Entry 31.) Moreover, the ALJ considered Benson-White's subjective complaints of disabling pain in conjunction with *not only* her abilities to perform daily activities *but also* her medical evidence—such as treatment notes containing indications contrary to her complaints—in determining that Benson-White's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. There is substantial evidence supporting the ALJ's finding that Benson-White's complaints regarding the effects of her symptoms are inconsistent with the record. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be

reasonably controlled by medication or treatment, it is not disabling"); see also Hines, 453 F.3d 565, n.3 (noting that a claimant's allegations of pain "need not be accepted to the extent that they are inconsistent with available evidence . . . ."); Craig, 76 F.3d at 595. Accordingly, the court may not substitute its judgment for the ALJ's. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that the Commissioner's decision was supported by substantial evidence and reached through application of the correct legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 3, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district court judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).